# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EBONY CRUMBLE, et al.,

                        Plaintiffs,

             v.                                    Case No. 20-CV-1585

KETTLE MORAINE SCHOOL DISTRICT,

                        Defendant.

# DECISION AND ORDER

## 1. Facts and Procedural History

According to the complaint, SQ entered the sixth grade at Kettle Moraine Middle School as a transfer student in the Spring of 2017. (ECF No. 1, ¶ 26.) "From the time of her enrollment at [the Kettle Moraine School District], SQ has endured persistent, pervasive and increasingly severe acts of racial harassment and bullying, including cyberbullying involving the use of [Kettle Moraine School District] property or technology, at the hands of fellow students." (ECF No. 1, ¶ 28.) She points to seven incidents over roughly three years.

On October 16, 2017, SQ received an email "racially attacking" her. SQ notified her teacher, who in turn notified the Vice Principal. (ECF No. 1, ¶ 38.) The Vice

Principal investigated and identified the student who sent the email. (ECF No. 1, ¶ 39.) The school declined to provide SQ or Crumble any additional information, explaining that it could not disclose punishments. (ECF No. 1, ¶ 39.)

On February 8, 2019, a student wrote a racial slur directed at SQ on a classroom whiteboard. (ECF No. 1, ¶ 42.) Crumble notified the school, and the Principal investigated. (ECF No. 1, ¶¶ 44-43.) As part of the investigation, the Principal spoke to SQ and said that the student probably wrote the slur on the whiteboard because he hears the slur in music. (ECF No. 1, ¶ 47.)

In March of 2019 a teacher turned off the lights in a classroom, prompting a student to say, "where did [SQ] go?" (ECF No. 1, ¶ 63.) The teacher did not respond to this "racial taunting." (ECF No. 1, ¶ 63.)

In the fall of 2019 SQ began ninth grade at Kettle Moraine High School. (ECF No. 1, ¶ 27.) On October 19, 2019, a student used a racial slur in a classroom and again in the cafeteria. (ECF No. 1, ¶ 65.) SQ and another student who heard the slur reported the incidents to the Vice Principal. (ECF No. 1, ¶ 67.) About a day later the Vice Principal informed SQ and the other reporting student that the incident could not be verified. (ECF No. 1, ¶ 69.)

On October 21, 2019, the sister of the student who allegedly used the slur in the classroom and cafeteria a few days earlier was video recorded "physically intimidating and threatening SQ and some of her 9th grade classmates over [her sister's] use of and

'right to use' a racial slur." (ECF No. 1, ¶ 73.) The incident was reported to the Vice Principal, and the girl "was issued an undisclosed reprimand." (ECF No. 1, ¶ 74.)

On October 28, 2019, a student "told SQ to 'go back to the hood.'" (ECF No. 1, ¶ 76.) The student then posted on Snapchat a modified racial slur. (ECF No. 1, ¶ 76.) When Crumble reported this incident, the Principal "assured that she would get to the bottom of things and issue 'swift justice' to the offending student." (ECF No. 1, ¶ 78.)

On September 3, 2020, a student "created a direct Snapchat of himself pictured with a racial attack as a headline on" another student's phone, and then sent it to SQ. (ECF No. 1, ¶ 96.) SQ shared the Snapchat with her peers. The following day the incident was referred to law enforcement, and both the student who created the Snapchat and the student whose phone was used were charged with disorderly conduct. (ECF No. 1, ¶ 105.)

Ebony Crumble filed this action on October 16, 2020, asserting claims on her own behalf as well as on behalf of SQ, her minor daughter. Both Crumble and SQ purport to assert claims "on behalf of all others similarly situated." (ECF No. 1.) Yet the complaint does not otherwise purport to be a class action, and the complaint does not contain any allegations under Federal Rule of Civil Procedure 23. Thus, it is unclear what the plaintiffs intend when they purport to be proceeding "on behalf of all others similarly situated."

The plaintiffs allege claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 200d *et seq.* (ECF No. 1, ¶¶ 124-33), and the Fourteenth Amendment by way of 42 U.S.C. § 1983 (ECF No. 1, ¶¶ 134-36).

The complaint contains a hyperbolic "prologue," which the defendants have moved to strike. (ECF No. 10.) The plaintiffs did not respond to the motion to strike.

The defendants then filed a motion to dismiss. (ECF No. 11.) The plaintiffs responded (ECF No. 13), and the defendants replied (ECF No. 14).

The plaintiffs' response, however, was untimely, filed the day after it was due. *See* Civ. L.R. 7(b) (E.D. Wis.). The plaintiffs did not acknowledge that their response was late, much less move for an extension of time. That by itself would be reason enough to strike the response and grant the defendants' motion as unopposed. *See* Civ. L.R. 7(d) (E.D. Wis.).

However, because the court routinely gives litigants at least one opportunity to amend a complaint following dismissal, *see Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015), such a dismissal would probably only result in forcing the plaintiffs to file an amended complaint, which in turn would likely lead to a repetition of the current motion and briefing. Thus, the court accepts the plaintiffs' untimely response. But it reiterates its expectation that all parties will fully and completely comply with the court's local rules and all applicable federal rules of procedure.

One aspect of the defendants' motion to dismiss was that Kettle Moraine High School and Kettle Moraine Middle School are mere buildings and not suable entities separate from the school district. (ECF No. 12 at 21.) When the plaintiffs did not respond to this aspect of the defendants' motion, the defendants argued in reply that those two defendants should be dismissed. (ECF No. 14 at 15.) Only after all briefing on the motion to dismiss was complete did the plaintiffs voluntarily dismiss Kettle Moraine High School and Kettle Moraine Middle School as defendants. (ECF No. 15.)

The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. All parties have consented to have this court preside in this matter under 28 U.S.C. § 636(c). (ECF Nos. 7, 8.)

## 2. Plaintiffs' Motion to File an Amended Complaint

The same day they voluntarily dismissed the schools the plaintiffs moved to file an amended complaint. The only changes they identify are that the proposed amended complaint omits the prologue that is the subject of the defendants' motion to strike and adds as defendants the Kettle Moraine School Board and its members.

The defendant—now only Kettle Moraine School District—opposes the plaintiffs' motion to amend, arguing that amendment would be futile because the plaintiffs lack any claim against the proposed new defendants and the proposed amended complaint would otherwise be subject to dismissal for the reasons set forth in the motion to dismiss. (ECF No. 17.)

In reply, the plaintiffs argue that, because they initially "prayed for punitive damages against the policymakers who are negligent in not appropriately responding to the harassment issues within the KM School District schools," the individual school board members are proper defendants. (ECF No. 18 at 1-2.)

Although Federal Rule of Civil Procedure 15(a) "reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if … the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002) (citing *Foman v. Davis,* 371 U.S. 178, 181-82 (1962); *Bethany Pharm. Co. v. QVC Inc.,* 241 F.3d 854, 861 (7th Cir. 2001)). There is no point in allowing a plaintiff to file an amended complaint if that complaint could not survive a motion to dismiss.

Aside from naming each school board member, stating that he or she lives in Waukesha County, and "was a duly elected official of the Kettle Moraine School Board" (ECF No. 16-1, ¶¶ 5-12), the proposed amended complaint is devoid of any allegation as to what each board member did or failed to do that would suggest a basis for liability. Nor is there any indication of what the school board (as an institution distinct from its members) is alleged to have done or failed to do.

It should go without saying that a plaintiff cannot recover damages, punitive or compensatory, from a person unless that person did something wrong. Thus, the fact that the plaintiffs want the school board and its members to pay punitive damages for

the alleged malfeasance of the Kettle Moraine School District is not a basis for making them defendants. Because the proposed amended complaint is completely devoid of any allegation suggesting a plausible basis for any claim against the defendants the plaintiffs seek to add, the motion to file an amended complaint will be denied.

Thus, the court turns to the original complaint and the motions to strike and dismiss.

### 3. Motion to Strike

The plaintiffs did not respond to the defendant's motion to strike the "Prologue" of the complaint. Therefore, the motion to strike (ECF No. 10) is granted as unopposed. *See* Civ. L.R. 7(d) (E.D. Wis.) Paragraphs 8 through 23 of the complaint will be stricken.

### 4. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."" *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all

inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 4.1. Title VI

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." It is a companion of Title IX, which similarly prohibits discrimination based on sex, and thus courts may apply principles articulated with respect to Title IX to claims under Title VI. *Doe v. Smith*, 470 F.3d 331, 338 (7th Cir. 2006).

"The Supreme Court has set a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). A school district is not liable under Title VI simply because one of its students was subjected to inexcusable racial harassment by her peers. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

> Courts … must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available

only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education ….

*Id.* at 651-52. "The harassment must further have a 'concrete, negative effect' on the victim's education, which may include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, or physical exclusion from a school resource." *C.S. v. Couch*, 843 F. Supp. 2d 894, 907 (N.D. Ind. 2011) (citing *Davis*, 526 U.S. at 650-51; *Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003); *S.G. v. Rockford Bd. of Educ*, No. 08 C 50038, 2008 U.S. Dist. LEXIS 95522, 2008 WL 5070334, at *4 (N.D. Ill. Nov. 24, 2008); *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010)).

Moreover, a school district may be liable for peer-on-peer racial harassment only if the district "acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis*, 526 U.S. at 633.

Once a school has notice of peer-on-peer racial harassment, it must act. *See Gabrielle M.*, 315 F.3d at 824. But officials are given wide discretion as to how they must respond. *Davis*, 526 U.S. at 648; *Galster*, 768 F.3d at 621. A school need not abide a victim's demands for a particular resolution of her complaint. *Davis*, 526 U.S. at 648. Title VI only proscribes responses that are "clearly unreasonable in light of the known circumstances." *Id.*; *see also Jauquet v. Green Bay Area Catholic Educ.*, No. 20-C-647, 2020 U.S. Dist. LEXIS 153636, at *19 (E.D. Wis. Aug. 24, 2020) ("The question is not whether the school could have handled the matter better or differently but instead is whether the school's decisions were clearly unreasonable.").

Thus, in assessing the reasonableness of a school officials' response to racial harassment, the court must be mindful that "a federal court is rarely the proper forum for addressing and resolving disputes over the proper level of school discipline. The Supreme Court has made clear that 'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'" *Jauquet*, 2020 U.S. Dist. LEXIS 153636, at *20 (quoting *Davis*, 526 U.S. at 648; citing *Estate of Lance v. Lewisville Indep. School Dist.*, 743 F.3d 982, 996 (5th Cir. 2014) ("Judges make poor vice principals ….")).

Kettle Moraine argues that the plaintiffs have pled themselves out of court because they allege in their complaint that the district responded to each alleged incident of racial harassment. Therefore, as a matter of law, the district was not deliberately indifferent.

The plaintiffs' primary argument in response is that it is inappropriate for the court to decide at the motion to dismiss stage whether the district was deliberately indifferent. (ECF No. 13 at 3-7.) Secondarily, the plaintiffs argue that "Title VI requires schools to eliminate harassment." (ECF No. 13 at 6.)

Both of the plaintiffs' arguments are wrong. The Supreme Court has explicitly recognized that "[i]n an appropriate case, there is no reason why courts, on a motion to dismiss, … could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. Moreover, the plaintiffs have failed to support their assertion that "[c]ourts in this district have routinely preserved the issue of Deliberate

Indifference for the trier of fact." In the only case the plaintiffs cite from this district, *NR Doe v. St. Francis Sch. Dist.*, 834 F. Supp. 2d 889 (E.D. Wis. 2011), the court did say, without citation, that "determining whether a defendant has displayed deliberate indifference to a plaintiff's rights is distinctly the province of the fact-finder at trial." *Id.* at 892. But the court then granted summary judgment for the defendants, concluding in part, "Thus, it is clear that St. Francis reacted with due concern to known facts. Consequently, under any view of these facts, the conduct of St. Francis does not reflect deliberate indifference to any misconduct Sweet engaged in with NR Doe." *Id.* at 899.

The plaintiffs cite three cases from district courts around the Seventh Circuit for the uncontroversial proposition that deliberate indifference is a question of fact. (ECF No. 13 at 4 (citing *Ballheimer v. Ryan Batts #525*, No. 1:17-cv-01393-SEB-DLP, 2020 U.S. Dist. LEXIS 48456 (S.D. Ind. Mar. 20, 2020)[1]; *Boone v. Witherspoon*, No. 14-CV-2296, 2017 U.S. Dist. LEXIS 142851 (C.D. Ill. Sep. 5, 2017); *Cain v. Budz*, 494 F. Supp. 2d 900 (N.D. Ill. 2007)).) But the plaintiffs overlook that a jury is required to resolve only *disputed* questions of fact. Courts routinely decide the question of deliberate indifference as a matter of law in conjunction with motions to dismiss or for summary judgment, and in fact did so in *Cain*, 494 F. Supp. 2d at 905. In *Ballheimer*, 2020 U.S. Dist. LEXIS 48456, and *Boone*, 2017 U.S. Dist. LEXIS 142851, the court denied the motions for summary judgment not because the court held that deliberate indifference is always a jury

---

[1] Complicating the court's review was the fact that the plaintiffs failed to provide proper citations for *Balheimer* and *Boone*.

question but because the court concluded that specific factual disputes in those cases (neither of which involved claims under Titles VI or IX or were remotely factually similar to this action) precluded summary judgment.

As for the plaintiffs' assertion that schools are required to eliminate peer-on-peer harassment, the Court of Appeals for the Seventh Circuit has explicitly held, "*Davis* does not require funding recipients to remedy peer harassment." *Gabrielle M.*, 315 F.3d at 825 ("But in arguing that in order not to act with deliberate indifference, the school district must have effectively ended all interaction between the two students to prevent conclusively any further harassment, Gabrielle misunderstands the law.") (citing *Davis*, 526 U.S. at 648-49).

The only cases that the plaintiffs present in support of their assertion that the district was obligated to eliminate harassment are off the mark. The plaintiffs cite a 1978 district court decision (which predated *Davis* by more than two decades) in which the court said, "Defendants have an affirmative obligation to eliminate and prevent racial segregation in the public schools of District # 186." (ECF No. 13 at 6 (quoting *McPherson v. Sch. Dist.*, 465 F. Supp. 749, 753 (S.D. Ill. 1978)).) The plaintiffs' failed to disclose that this was not a judicial holding as to the scope of Title VI but a quotation from a 1974 consent decree between the parties. *McPherson*, 465 F. Supp. at 753.

The plaintiffs also cite *Zamecnik v. Indian Prairie Sch. Dist. # 204 Bd. of Educ.*, 710 F. Supp. 2d 711, 720 (N.D. Ill. 2010), where the court said, "The District's current policies

and procedures serve an important function to minimize student harassment, thereby create a safe, harassment-free environment for all students." (ECF No. 13 at 6.) Again, this was not a holding as to a school's obligations under Title VI, but rather an opinion of the defendant's expert as to the scope of the district's anti-harassment policies. *Zamecnik*, 710 F. Supp. 2d at 719-20. Moreover, *Zamecnik* is wholly inapposite in that it was about whether a student had a right to wear a shirt that the school regarded as harassing toward homosexuals. The decision never mentioned Titles VI or IX, but it underscores the sometimes conflicting pressures and difficulties that school administrators face protecting students from harassment. *Cf. Galster*, 768 F.3d at 621. ("Federal law gives school officials wide discretion in making disciplinary decisions, especially as they have to balance the interests of all concerned.")

Thus, the court turns to the question of whether this is "an appropriate case" for dismissal because the complaint establishes that the district's response to alleged racial harassment was not so "clearly unreasonable" as to amount to deliberate indifference, *see Davis*, 526 U.S. at 649. Notwithstanding the shortcomings in the plaintiffs' response to the defendant's motion and their troubling misrepresentations regarding legal authority, the court can grant the motion to dismiss only if there is no plausible way the plaintiffs could prevail on their claims.

In the district's view, because it did "something" in response to the alleged harassment, it was, as a matter of law, not deliberately indifferent. (ECF No. 12 at 13.) It

asserts, "In almost every instance the District investigated and meted out some form of discipline." (ECF No. 12 at 13.)

That assertion, however, is not consistent with the allegations in the complaint. It is only with respect to two out of the seven incidents that the complaint alleges the district investigated and punished the actors. (ECF No. 1, ¶¶ 74 (regarding the Oct. 21, 2019 incident); 100, 105 (regarding the Sept. 3, 2020 incident).) In another instance, the complaint alleges that the school investigated but found the evidence insufficient to discipline the student. (ECF No. 69 (regarding the Oct. 19, 2019 incident).) The reason for not disciplining an actor following the district's investigation of a fourth incident is unclear. (ECF No. 1, ¶¶ 44-50 (regarding the Feb. 8, 2019 incident).) And in a fifth incident, although the plaintiffs allege that the school investigated, they do not know if the student was disciplined because the school was "not at liberty to disclose punishments." (ECF No. 1, ¶¶ 38-39 (regarding Oct. 16, 2017 incident).) As to another incident the plaintiffs do not state whether or not the district investigated, but they do allege that the actor was not punished. (ECF No. 1, ¶¶ 63-64 (regarding the March 2019 incident).) And, finally, there is one incident where it is unclear if the district investigated or punished the actor. (ECF No. 1, ¶ 76 (regarding the Oct. 28, 2019 incident).)

Moreover, although dismissal is inappropriate "when the school made no effort whatsoever to either investigate harassment, stop it, or discipline the offending

student," (ECF No. 12 at 10 (quoting *C.S.*, 843 F. Supp. 2d at 911)), the district is wrong to suggest that the inverse is necessarily true. In other words, just because the school made *some* effort does not necessarily preclude a finding of deliberate indifference. *See Bowe v. Eau Claire Area Sch. Dist.*, No. 16-cv-746-jdp, 2018 U.S. Dist. LEXIS 19671, at *10 (W.D. Wis. Feb. 7, 2018) ("Nominal action could be clearly unreasonable in some circumstances, as in *Davis*, when the school merely 'threatened' a male student who repeatedly sexually harassed the plaintiff by speaking to her in vulgar language, rubbing against her in a sexually suggestive behavior, and attempting to touch her breasts and genital area."); *see also Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) ("A state officer is deliberately indifferent when he does nothing or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." (citation omitted)).

Although the allegations in the complaint suggest that it will be exceptionally difficult for the plaintiffs to be able to muster proof to sustain a Title VI claim, the court cannot say that they have pled themselves out of court. It is plausible that, with discovery, the plaintiffs will be able to gather evidence that could lead a reasonable finder of fact to conclude that the district's response, either to certain instances or to the overall harassment that SQ allegedly suffered, was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

The plaintiffs would then need to also prove that the students' conduct amounted to actionable harassment. The district generally does not address this element in its motion to dismiss, and thus the court will not discuss the issue further.

Therefore, the court must deny the district's motion to dismiss the plaintiffs' Title VI claim.

### 4.2. Constitutional Claim

In addition to their claim under Title VI, the plaintiffs' complaint includes as a heading "Claims Pursuant to 42 U.S.C. § 1983 and to the 14th Amendment to the U.S. Constitution. (ECF No. 1 at 26.) Aside from incorporating prior paragraphs, and restating the text of § 1983, the plaintiffs in this section of the complaint state only, "The acts and omissions of the Kettle Moraine Defendants specifically undermined and interfered with the rights and benefits of education owed to SQ and other similarly situated students, and Defendants are therefore liable under 42 U.S.C. §1983." (ECF No. 1, ¶ 136.) Thus, it is unclear what the nature of the plaintiffs' constitutional claim is.

The district presumes the claim is one of equal protection. (ECF No. 12 at 20.) The plaintiffs' response does not much clarify the nature of their claims. They address equal protection, but only in conjunction with an argument that the district did not make—whether a plaintiff can simultaneously pursue both an equal protection and a Title VI claim. (ECF No. 13 at 7-8.) The plaintiffs then offer the heading, "The Plaintiff's substantive due process claims should not be dismissed" (ECF No. 13 at 8), thus

suggesting that the constitutional claim is not one of equal protection but rather of substantive due process (or perhaps it is both). Specifically, the plaintiffs assert that the district violated SQ's substantive due process rights and is liable under a state created danger theory. (ECF No. 13 at 9-10.) The lack of even the most rudimentary explanation as to the basic nature of the plaintiffs' constitutional claim is reason enough to grant the district's motion to dismiss this claim.

As to the parties' arguments, the defendants' first argument is that any equal protection claim fails for the same reasons as the plaintiffs' Title VI claim. (ECF No. 12 at 20 (citing *Galster*, 768 F.3d at 622 (holding that an equal protection claim against a school for peer harassment requires proof of deliberate indifference)).) However, as discussed above, the plaintiffs' Title VI claim is not subject to dismissal. Therefore, the plaintiffs' constitutional claim will not be dismissed on that basis.

The district alternatively argues that the constitutional claim must be dismissed because the complaint does not allege a basis for holding the district liable.

> To prevail on a § 1983 claim for damages against a local government, a plaintiff must demonstrate that the allegedly illegal action implemented an official policy or custom adopted by the governmental body. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *Monell* expressly rejects governmental liability based on an employee's misconduct under the doctrine of *respondeat superior. Id*. at 691.

*Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 615-16 (7th Cir. 2008). "To state a *Monell* claim, Plaintiff must plead three elements: (1) an action pursuant to a municipal policy; (2) culpability, meaning that policymakers were deliberately

indifferent to a known risk that the policy would lead to constitutional violations; and (3) that the municipal action caused her constitutional injury." *Walker v. Bd. of Educ.*, No. 19 CV 4115, 2021 U.S. Dist. LEXIS 56292, at *9 (N.D. Ill. Mar. 25, 2021) (citing *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020)). "A plaintiff can establish a municipal action (the first element) under three theories: (1) an express policy adopted and promulgated by a municipality's officers; (2) an informal but widespread practice or custom; or (3) an action by a policymaker authorized to act for the municipality." *Id.* (citing *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020)).

The plaintiffs offer only the barest of responses to the district's *Monell* argument, asserting that "the Plaintiffs have both sufficiently alleged in their pleadings a widespread practice of deliberate indifference regarding Defendants' responsiveness to peer bullying and also alleged a constitutional injury inflicted by the superintendent of the district, and to the school board, who for all purposes under *Monell*, has final policymaking authority." (ECF No. 13 at 8.) This assertion is not supported by any citation to the complaint, nor is it otherwise developed.

Faced with only this bald assertion in response, it is easy to conclude that the plaintiffs' complaint falls short of pleading the basic elements of a *Monell* claim. The plaintiffs do not even offer the sort of boilerplate allegations of a municipal policy that courts have found insufficient. *Cf. Baxter by Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994) (quoting *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994)).

Moreover, the allegations in the complaint actually suggest the absence of any policy or custom. Notably, the complaint explicitly alleges that the district had formal anti-harassment policies (ECF No. 1, ¶¶ 24, 25), district officials responded to nearly all instances of alleged harassment (ECF No. 1, ¶¶ 38-105), and the district took other steps in response to SQ's complaints, such as creating a "cultural advisory committee" (ECF No. 1, ¶ 62, 85, 88-95).

Therefore, the court will grant the district's motion to dismiss the plaintiffs' constitutional claim. The plaintiffs have not adequately alleged a basis for the district to be liable for a constitutional tort.

Finally, as noted above, in response to the district's motion the plaintiffs seem to argue that the complaint alleges a substantive due process claim. But even liberally construing the complaint, the complaint cannot be read as fairly alleging such a claim. Moreover, a plaintiff cannot amend its complaint through a response to a motion to dismiss. *Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012). Therefore, although there are strong reasons to question whether such a claim might be viable under the facts alleged, *see, e.g.*, *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798-99 (7th Cir. 2015); *Doe v. Sch. Dist. 214*, No. 16-cv-7642, 2021 U.S. Dist. LEXIS 64848, at *16-*26 (N.D. Ill. Apr. 2, 2021); *D.S. v. E. Porter Cnty. Sch. Corp.*, No. 2:11-CV-431-PRC, 2013 U.S. Dist. LEXIS 61146, at *37 (N.D. Ind. Apr. 29, 2013), the court will not assess the merits of a claim that was not alleged in the complaint.

### 4.3.    Punitive Damages

The district moved to dismiss any demand for punitive damages because punitive damages may not be awarded in private suits under Title VI (ECF No. 12 at 21) and municipal entities are immune from punitive damages under § 1983. (ECF No. 12 at 22.)

The plaintiffs' response did not address this aspect of the district's motion. By not responding, the plaintiffs have waived any argument in opposition, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), and therefore the court will grant this aspect of the district's motion.

## 5.  Conclusion

**IT IS THEREFORE ORDERED** that the motion to strike portions of the plaintiffs' complaint (ECF No. 10) is **granted**. Paragraphs 8 through 23 of the complaint (ECF No. 1) are hereby stricken.

**IT IS FURTHER ORDERED** that the motion to dismiss (ECF No. 11) is **granted in part**. It is granted with respect to any constitutional claim. Any constitutional claim is dismissed without prejudice. It is also granted with respect to the plaintiffs' request for punitive damages. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to file an amended complaint (ECF No. 16) is **denied**.

Dated at Milwaukee, Wisconsin this 30th day of April, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge