# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EBONY CRUMBLE, et al.,

     **Plaintiffs,**

  **v.**          **Case No. 20-CV-1585**

KETTLE MORAINE SCHOOL DISTRICT,

    **Defendant.**

## DECISION AND ORDER

### 1. Facts and Procedural History

SQ, a minor, was allegedly subject to racial bullying and harassment by her peers in the Kettle Moraine School District. She and her mother, Ebony Crumble, sued the school district under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* The court previously granted the defendant's motion to strike portions of the plaintiffs' complaint (ECF No. 10), granted in part the defendant's motion to dismiss (ECF No. 11), and denied the plaintiffs' motion to file an amended complaint (ECF No. 16). *Crumble v. Kettle Moraine Sch. Dist.*, No. 20-CV-1585, 2021 U.S. Dist. LEXIS 83002 (E.D. Wis. Apr. 30, 2021).

The plaintiffs again seek to file an amended complaint. (ECF No. 23.) They seek to replead the constitutional claims against the school district that the court dismissed and to add claims against the district's superintendent. The defendant opposes the motion, arguing that the amendment would be futile.

## 2. Leave to Amend Standard

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied "where the amendment would be futile." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)). "A new claim is futile if it would not withstand a motion to dismiss." *Divane v. Nw. Univ.*, 953 F.3d 980, 993 (7th Cir. 2020) (quoting *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001)). As this court stated in its earlier decision,

> [t]o survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

*Crumble*, 2021 U.S. Dist. LEXIS 83002, at *8.

### 3. Analysis

In their initial complaint the plaintiffs appeared to attempt to allege some variety of constitutional claim. It was unclear what the claim was, and the plaintiffs' response to the defendant's motion to dismiss did little to clarify what the claim was. *Crumble*, 2021 U.S. Dist. LEXIS 83002, at *19-*20. The court considered whether the plaintiffs might be attempting to allege an equal protection claim but concluded that they had not pled sufficient facts under which the school district could plausibly be liable for such a claim. *Id.* at *21. As for a possible substantive due process claim, while noting "there are strong reasons to question whether such a claim might be viable under the facts alleged," the complaint could not be reasonably read as alleging such a claim. Therefore, the court did not consider the issue further. *Id.* at *22.

The plaintiffs have now added details in their proposed amended complaint and seek to add both substantive due process and equal protection claims.

### 3.1.Substantive Due Process

"Although the Due Process Clause of the Fourteenth Amendment prevents the state from infringing on an individual's right to life, liberty, or property, it does not 'impose an affirmative obligation on the [s]tate to ensure that those interests do not come to harm through other means.'" *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

"Accordingly, the Clause generally does not impose upon the state a duty to protect individuals from harm by private actors." *Id.* (citing *DeShaney*, 489 U.S. at 197).

Two exceptions exist to this general rule. The first is when the state actor has a "special relationship" with the plaintiff, such as when the state actor is holding the person in custody, thus preventing the plaintiff from getting aid. *See D.S.*, 799 F.3d at 798 (citing *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)). The plaintiffs correctly acknowledge that this exception does not apply to their claim. (ECF No. 28 at 4); *see J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272-73 (7th Cir. 1990).

The second exception "is the 'state-created danger exception,' which applies when a state actor's conduct 'creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that they otherwise would have been.'" *D.S.*, 799 F.3d at 798 (quoting *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993)). Under this exception, the plaintiffs must show (1) that the school district, "by its affirmative acts, created or increased a danger" to the plaintiff; (2) the district's failure to protect SQ "from danger was the proximate cause of her injury"; and (3) the district's failure to protect SQ "shocks the conscience." *D.S.*, 799 F.3d at 798. The plaintiffs assert that this exception applies. (ECF No. 28 at 5-8.)

The plaintiffs argue that the district and its superintendent created or increased the danger SQ faced "through its 'tolerance' and 'promotion of a lack of consequence for such acts' …." (ECF No. 28 at 5.) In the plaintiffs' view, the superintendent demonstrated

deliberate indifference because, stating that middle-schoolers are too young to understand the consequences of their actions, the administration focused on educating the students rather than punishing them. (ECF No. 28 at 5.) This perspective, according to the plaintiffs, suggested that racial bullying was tolerable. (ECF No. 28 at 6.)

As to the second element, the plaintiffs argue the district's lack of discipline to middle-school students caused SQ's injuries. (ECF No. 28 at 6.) And with respect to the third element they argue that the superintendent's view that education rather than discipline was the most appropriate response to middle-school racial bullying "shocks the conscience." (ECF No. 28 at 7.)

The state-created danger exception is rare and generally limited to egregious conduct. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). "[C]ourts have held routinely that a school's failure to prevent student-on-student harassment, assault, and bullying is not a state-created danger." *Brookman v. Reed-Custer Cmty. Unit, Sch. Dist. 255-U*, No. 18 C 7836, 2019 U.S. Dist. LEXIS 166956, at *19-20 (N.D. Ill. Sep. 27, 2019) (citing *D.S.*, 799 F.3d at 798-99 (finding "inaction or ineffective response to … bullying" did not constitute state-created danger); *Doe v. Evergreen Park Elementary Sch. Dist. 124*, No. 17-CV-3774, 2017 U.S. Dist. LEXIS 212909, 2017 WL 6731867, at *6-7 (N.D. Ill. Dec. 29, 2017) (same); *Doe v. Riverside-Brookfield Township High Sch. Dist. 208*, No. 95 C 2437, 1995 U.S. Dist. LEXIS 17028, 1995 WL 680749, at *5-6 (N.D. Ill. 1995) (same); *Morgan v. Town of Lexington, Mass.*, 823 F.3d 737, 744 (1st Cir. 2016) ("An alleged failure of the school to be

effective in stopping bullying by other students is not action by the state to create or increase the danger."); *Morrow v. Balaski*, 719 F.3d 160, 177-79 (3d Cir. 2013) (holding choice to suspend rather than expel bully did not constitute state-created danger)).

The plaintiffs' allegations regarding the district's "'tolerance' and 'promotion of a lack of consequence for such acts' …" suggest inaction rather than action. Inaction does not amount to a state-created danger. *Evergreen Park Elem. Sch. Dist. 124*, 2017 U.S. Dist. LEXIS 212909, at *18-19 (discussing *D.S.*, 799 F.3d at 798-99); *see also Spruill v. Bd. of Educ. of Chi.*, No. 20 C 4927, 2021 U.S. Dist. LEXIS 71188, at *8, *12 (N.D. Ill. Apr. 13, 2021); *Davis v. Carmel Clay Sch.*, No. 1:11-cv-00771-SEB-MJD, 2013 U.S. Dist. LEXIS 141888, at *42 (S.D. Ind. Sep. 30, 2013) (quoting *Reed*, 986 F.2d at 1125).

The plaintiffs do not allege that the superintendent engaged in any of the bullying or that another official under the superintendent's supervision did so and the superintendent turned a blind eye to the subordinate's bullying. *Cf. Black v. Littlejohn*, No. 19 C 2585, 2020 U.S. Dist. LEXIS 14814, at *13-14 (N.D. Ill. Jan. 28, 2020). The only affirmative acts that the plaintiffs point to are the superintendent's expression to the plaintiffs and other administrators of her view that certain incidents of peer racial harassment are best addressed through education rather than discipline and the district's decision to follow such an approach.

The plaintiff satisfies the first element only if she can show that a defendant, through some affirmative act, put the plaintiff if a *worse* position than she would have

been in if no state actor had been involved. *Brookman*, 2019 U.S. Dist. LEXIS 166956, at *20; *see also Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 598 (7th Cir. 2008) (noting that this element is satisfied when the plaintiff was safe before the state acted but unsafe after it acted). A school choosing to address incidents of peer racial harassment by educating the student actors did not plausibly put SQ in a worse position than if the defendant had done nothing. Therefore, SQ's allegations do not plausibly satisfy the first element of the state-created danger exception.

Moreover, relying on an educational rather than punitive approach to address peer racial harassment does not plausibly shock the conscience, and thus SQ also fails to satisfy the third element of the state-created danger exception. *See Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654-55 (7th Cir. 2011) ("Making a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation.").

The plaintiffs' proposed amended complaint fails to state a substantive due process claim. Consequently, it would be futile to permit them to file an amended complaint to add such a claim.

### 3.2. Equal Protection

The court previously concluded that the plaintiffs had cleared the low bar to state a plausible claim against the school district for violating Title VI. *Crumble*, 2021 U.S. Dist. LEXIS 83002, at *18. The facts that gave rise to the Title VI claim may support a parallel

equal protection claim, *see Doe v. Galster*, 768 F.3d 611, 622 (7th Cir. 2014), but only if there is a basis to hold the individual defendants—the school district and its superintendent—liable.

### 3.2.1. The District and *Monell*

With regard to the school district, § 1983 "does not incorporate the common-law doctrine of *respondeat superior*, so a municipality cannot be held liable for the constitutional torts of its employees and agents." *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978)). A municipal entity such as a school district is responsible only for its own actions. Therefore, to prevail on an equal protection claim against a school district, a plaintiff must challenge conduct that is properly attributable to the district itself. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997). Specifically, the plaintiff must prove that the constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694.

> We have interpreted this language to include three types of actions that can support municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

*First Midwest Bank*, 988 F.3d at 986.

Although the court previously concluded that the plaintiffs' Title VI claims were sufficient to proceed against the district, *Crumble*, 2021 U.S. Dist. LEXIS 83002, at *18, Title VI's liability scheme functions differently than that of § 1983. Just because the plaintiffs have a Title VI claim against the district does not mean they also have a § 1983 claim against the district. Based on the allegations in the complaint, the district is plausibly liable under Title VI not because of any systemic or policy-based failure. It is plausible that the plaintiffs may be able to muster evidence that, as to one or more of the alleged incidents, the district's response was deliberately indifferent. For that reason, the court allowed the plaintiffs to proceed with their Title VI claim. But the plaintiffs must allege more to plead a *Monell* claim against the district under § 1983.

The plaintiffs present three overlapping theories of *Monell* liability. First, they point to the superintendent's statements that, because middle-schoolers are too young to understand the consequences of their actions, it is best to address incidents of racial harassment through education rather than punishment. (ECF No. 28 at 9.) Specifically, they allege that the superintendent told Crumble "that the problems faced by children of color at KM Middle School would not be at KM High School because middle schoolers are too young to understand the consequences of their actions." (ECF No. 23-1, ¶ 43.) Additionally, in response to Crumble's "push[] for clear consequences for the students' behavior," the superintendent said "that if too much emphasis was placed on punishment then the appeal to empathy and toleration would be lost." (ECF No. 23-1, ¶ 64.)

Second, they allege that the superintendent's statements reflect a policy to not investigate incidents of racial harassment or discipline offenders, which amounted to deliberate indifference to racial harassment. (ECF No. 28 at 11-12.) And, third, they argue that the superintendent's inaction amounted to a tacit authorization of the offensive acts and constituted deliberate indifference. (ECF No. 28 at 11.)

Accepting for present purposes that the superintendent's statements regarding handling certain instances of racial harassment through educational rather than punitive measures amounted to a policy or custom of the district, such a policy did not plausibly result in a violation of SQ's constitutional rights.

While the plaintiffs obviously disagree with the superintendent's views, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Galster*, 768 F.3d at 621 ("Federal law gives school officials wide discretion in making disciplinary decisions, especially as they have to balance the interests of all concerned."). The proper functioning of schools depends on affording school officials significant discretion to address the problems they face. *See Wood*, 420 U.S. at 326.

Thus, the plaintiffs' theory that a policy or practice of addressing a certain incident with educational rather than punitive intervention evidences either intentional discrimination or deliberate indifference to discrimination fails as a matter of law. A school district is not required to punish all peer racial harassment to avoid suit under

Title VI or the Fourteenth Amendment. The plaintiffs' disagreement or dissatisfaction with the district's approach, or view that it could have handled the matters better, is not enough to state a claim under § 1983. The deliberate indifference standard leaves a lot of room for discretion by school officials, and the district's alleged practice was well within the appropriate range of discretion.

The plaintiffs' allegations do not support the inference that the district turned a blind eye to the peer racial harassment that allegedly occurred in its schools. To the contrary, the plaintiffs detail both broad and specific measures that the district undertook, including written policies (ECF No. 23-1, ¶¶ 7-8), educational strategies (ECF No. 23-1, ¶¶ 66-71), the creation of a Cultural Advisory Committee (ECF No. 23-1, ¶ 72), punishment of students (*see, e.g.*, ECF No. 23-1, ¶ 84), and contacting law enforcement (ECF No. 23-1, ¶ 89). Although they scoff at the district's actions, the plaintiffs' allegations do not plausibly support a conclusion that the district had a *de facto* policy of inaction or acceptance of racial harassment.

The plaintiffs' reliance on cases like *Bonchek v. Nicolet Unified Sch. Dist.*, No. 19-CV-425-JPS, 2019 U.S. Dist. LEXIS 219788 (E.D. Wis. Dec. 23, 2019),[1] is misplaced. Although a municipality's failure to investigate or discipline actors for constitutional violations may

---

[1] The court is disturbed to see that, despite having noted the problem in its prior decision, *see Crumble*, 2021 U.S. Dist. LEXIS 83002, at *12 n.1, plaintiffs' counsel has again repeatedly failed to provide complete citations for authority. To the extent that counsel may be relying on any authority that he did not identify in a commercial database, *i.e.*, LexisNexis or Westlaw, he has failed to comply with Civil Local Rule 7(j)(2). The court trusts this will not continue to occur.

be a basis for *Monell* liability, *see id.* at *15-16, that principle exists in the context of unconstitutional conduct by the municipality's employees. The plaintiffs have not developed any argument, much less presented any authority, supporting the extension of this principle to the context of a school district's failure to investigate or discipline students. Unlike municipal employees, students are not state actors, and thus a student's racial harassment of another student does not violate the constitution.

Accordingly, the plaintiffs' proposed amended complaint fails to state a constitutional claim against the school district. As such, it would be futile to grant them leave to file their proposed amended complaint to add such claims against the district.

### 3.2.2. The Superintendent

A state actor violates the Equal Protection Clause if she, "with a nefarious discriminatory purpose," discriminates against a person based on her "membership in a definable class." *Galster*, 768 F.3d at 622 (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). To prevail on such a claim the plaintiff must be able to show that the defendant "acted either intentionally or with deliberate indifference." *Id.* (quoting *Nabozny*, 92 F.3d at 454); *see also Sandra T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Doe v. Sch. Dist. 214*, No. 16-cv-7642, 2021 U.S. Dist. LEXIS 64848, at *29-30 (N.D. Ill. Apr. 2, 2021).

The plaintiffs' claim against the superintendent again rests primarily on the superintendent's statements expressing the view that education rather than punishment

is better for addressing certain instances of peer racial harassment. As stated above, these allegations fail as a matter of law to plausibly support an inference of intentional discrimination.

The plaintiffs alternatively argue that the superintendent should be personally liable on a failure to train theory. (ECF No. 28 at 14-15.) A failure to train claim is a variety of *Monell* liability that may apply to both municipalities and supervising officials. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Jones v. Forestal*, No. 1:18-cv-01987-SEB-DLP, 2020 U.S. Dist. LEXIS 52529, at *78 (S.D. Ind. Mar. 26, 2020) (discussing whether a sheriff was liable for allegedly failing to train his deputies). An official is potentially liable for a constitutional tort on a failure to train theory only if the official adopted a policy of inaction knowing that the lack of an adequate training program will result in constitutional violations. *Connick*, 563 U.S. at 61-62. It is not enough to allege that a supervisor provided training that was somehow deficient or even that the training was unreasonable; the policy of deficient training must amount to deliberate indifference to the rights of the person with whom the untrained persons will interact. *Id.* at 61. Only when a policymaker knows or should know that her training is insufficient to prevent constitutional torts by her employees will she be potentially personally liable. *Id.* at 62. Therefore, a pattern of similar constitutional violations by untrained employees is ordinarily required to support a failure to train claim. *Id.*

The fact that SQ allegedly suffered racial bullying on several occasions (seven incidents over three years, each perpetrated by a different student) does not suggest a pattern of constitutional violations. Peer racial bullying, in itself, is not a constitutional violation that a school superintendent is obligated to provide training to prevent or eliminate. Rather, a constitutional violation occurs only when the school official is deliberately indifferent to that peer racial harassment. Consequently, a superintendent is plausibly personally liable on a failure to train theory only if there was a pattern of incidents where the superintendent's subordinates were deliberately indifferent to peer racial harassment, that pattern of incidents did or should have alerted the superintendent to the need for training, and the superintendent was deliberately indifferent to that need for training.

As discussed previously, it is only with respect to a few of the seven incidents that school officials plausibly may have been deliberately indifferent. *Crumble*, 2021 U.S. Dist. LEXIS 83002, at *15-16. Deliberate indifference was plausible generally only because the complaint lacked details as to the district's response to specific instances. Assuming that the superintendent knew of each of those incidents and of her subordinates' response, and assuming that the response to each incident reflected deliberate indifference to SQ's rights, this subset of a few incidents was insufficient to constitute the requisite pattern of constitutional violations. *See Davis*, 2013 U.S. Dist. LEXIS 141888, at *45-46 (citing *Grieveson v. Anderson*, 538 F.3d 763, 773-75 (7th Cir. 2008) (four instances of alleged

unconstitutional conduct did not constitute widespread pattern or practice); *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (allegations of two instances of unconstitutional conduct did not demonstrate widespread practice)).

Further undercutting any inference of a systemic training deficiency is the fact that the plaintiffs explicitly allege that the school district had written policies on racial harassment and bullying (ECF No. 23-1, ¶¶ 7-8) and that the superintendent communicated to the middle and high school principals the administration's focus on addressing racial harassment through educational means. (ECF No. 23-1, ¶¶ 45, 66.) Again, notwithstanding the plaintiffs' disagreement with the approach, the superintendent's focus on an educational approach to the problem of racial bullying does not plausibly support an inference that the superintendent was deliberately indifferent. Finally, the fact that school officials (often the same official who was allegedly deliberately indifferent in another incident) are alleged to have responded to instances of alleged bullying of SQ in a manner that was not plausibly deliberately indifferent, *see Crumble*, 2021 U.S. Dist. LEXIS 83002, at *15-16 (discussing incidents and the school district's response), tends to negate any inference of a deficiency in staff training.

Therefore, the plaintiffs' proposed amended complaint fails to state a claim against the superintendent and granting leave to amend would be futile.

### 4. Conclusion

As alleged, the plaintiffs' proposed constitutional claims rest primarily on the allegation that the superintendent expressed her view that certain instances of peer racial harassment are best addressed educationally rather than punitively. Notwithstanding the plaintiffs' objection to the superintendent's view, the superintendent's approach did not, as a matter of law, amount to a state created danger or deliberate indifference to the plaintiffs' constitutional rights. Moreover, the allegations in the complaint do not plausibly support a basis for holding the superintendent (or the district) liable on a failure to train theory. Accordingly, permitting the plaintiffs to file an amended complaint would be futile, and therefore the plaintiffs' motion for leave to file an amended complaint will be denied.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for leave to file an amended complaint (ECF No. 23) is **denied**.

Dated at Milwaukee, Wisconsin this 2nd day of July, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge