UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

S.Q., a minor, individually, by and through her
Parent EBONY CRUMBLE, and
EBONY CRUMBLE,

    Plaintiffs,

v.                                               Case No. 2:20-cv-1585

KETTLE MORAINE SCHOOL DISTRICT,

    Defendant.

---

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

                                      Ronald S. Stadler
                                      Jonathan E. Sacks
                                      KOPKA PINKUS DOLIN PC
                                      Attorneys for Defendant – Kettle Moraine School District
                                      N19 W24200 Riverwood Dr., Suite 140
                                      Waukesha, WI 53188-1191
                                      (847) 549-9611

**INTRODUCTION**

Plaintiff, S.Q.'s opposition to the Kettle Moraine School District's (the "District") motion for summary judgment focuses on immaterial issues of facts, gross mischaracterizations of the record, and an incorrect understanding of the law. The overarching theme of Plaintiff's brief is a misguided claim that although the District investigated and addressed each claim of harassment, that it was somehow deliberately indifferent to Plaintiff's complaints.

Plaintiff fails to carry her burden of proving deliberate indifference. In fact, Plaintiff's main thrust is her claim that despite its investigation and remedial measures, the District was deliberately indifferent because she believes it should have followed its formal anti-discrimination and harassment policy in investigating her allegations of peer-on-peer harassment. The argument that one's failure to follow its own policies demonstrates deliberate indifference has been soundly rejected over and over.

Plaintiff also attempts to manufacture disputed issues of fact, but she fails in every way. The District never condoned or tolerated the actions of the few students who engaged in single acts of misconduct. Nevertheless, Plaintiff points to factual disputes that are either immaterial to whether the District's actions were clearly unreasonable, or they are so mischaracterized that they are not truly disputed. Summary judgment must be granted.

**ARGUMENT**

**I. PLAINTIFF HAS FAILED TO SHOW THAT THE DISTRICT'S RESPONSE TO KNOWN ACTS OF HARASSMENT WAS CLEARLY UNREASONABLE.**

Plaintiff has the burden of establishing deliberate indifference as an element of a Title VI claim. *N.K. v. St. Mary's Springs Acad. of Fond du Lac Wis., Inc.*, 965 F. Supp. 2d 1025, 1036 (E.D. Wis. 2013). On summary judgment, this means that Plaintiff must come forward and demonstrate that "based upon all of the facts presented in this case, there is a genuine issue of

1

material fact regarding whether the School's response was clearly unreasonable." *Chivers v. Cent. Noble Cmty. Schs*, 423 F. Supp. 2d 835, 850 (N.D. Ind. 2006) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)). Plaintiff has wholly failed to carry her burden of demonstrating that the District's response to known acts of harassment was clearly unreasonable.

### A. The Particular Procedures Followed In Responding To Known Acts Of Peer-On-Peer Harassment Are Irrelevant As Long As The District's Actions Were Not Clearly Unreasonable.

The District undisputedly investigated and addressed each incident of known harassment reported by Plaintiff or her mother. Despite this, Plaintiff attempts to craft a deliberate indifference argument based on a misguided claim that the District should have followed the specific procedures in its anti-discrimination and harassment policy in investigating the seven isolated acts of harassment. *See* [ECF 64, pp. 7-8]. Plaintiff ignores that how the District investigated is irrelevant if its response was not clearly unreasonable. The undisputed facts show, overwhelmingly, that the District investigated each incident and issued prompt remedial action. Plaintiff cannot meet her burden of proving deliberate indifference on these facts.

#### 1. Whether the District responded to known acts of peer-on-peer harassment in accordance with any specific policy or procedure is entirely irrelevant if its actions were not clearly unreasonable.

School "officials are given wide discretion as to how they must respond" to harassment. *Crumble v. Kettle Moraine Sch. Dist.*, No. 20-CV-1585, 2021 U.S. Dist. LEXIS 83002, at *10 (E.D. Wis. Apr. 30, 2021). "The question is not whether the school could have handled the matter better or differently but instead is whether the school's decisions were clearly unreasonable." *Jauquet v. Green Bay Area Catholic Educ.*, No. 20-C-647, 2020 U.S. Dist. LEXIS 153636, at *19 (E.D. Wis. Aug. 24, 2020); *see also Chivers*, 423 F. Supp. 2d at 850.

2

Contrary to Plaintiff's argument, whether the District acted in accordance with any specific policy is entirely irrelevant to the Court's deliberate indifferent analysis and this argument has been repeatedly rejected:

> Even if a jury could find Mr. Gray failed to follow school policy in this manner, such a failure could not, standing alone, amount to deliberate indifference. *See Rost*, 511 F.3d at 1122 (finding allegation that school district violated its sexual harassment policy 'would sound in negligence, not deliberate indifference'); *Whitley v. Ind. Sch. Dist. No. 10 of Dewey Cnty.*, No. CIV-18-331-SLP, 2019 U.S. Dist. LEXIS 226017, 2019 WL 7667329, at *8 (W.D. Okla. Apr. 22, 2019) (noting that, 'just because the investigating school official allegedly failed to follow district policy does not mean that her actions were clearly unreasonable,' because a 'district's failure to comply with its regulations does not establish the requisite deliberate indifference') (quoting *Sanches v. Carrollton-Farmers Branch Ind. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011)) (cleaned up); *Gebser*, 524 U.S. at 291-92 (noting that the Court has never held the implied right of action under Title IX allowed recovery for violation of particular 'administrative requirements,' such as failure to implement a sexual harassment policy).

*Williams v. Indep. Sch. Dist. No. 5*, No. 19-CV-499-JFJ, 2021 U.S. Dist. LEXIS 80382, at *22-23 (N.D. Okla. Apr. 27, 2021).[1]

If a school investigates a complaint, disciplines the perpetrator when appropriate, or takes steps to prevent future misconduct, a school's response is not clearly unreasonable. *See C.S. v. Couch*, 843 F. Supp. 2d 894, 910-12 (N.D. Ind. 2011). The fact that reasonable people could differ as to how a matter should have been handled, or even if the response was ideal, does not matter. *See Chivers*, 423 F. Supp. 2d at 850. Even if a school could have arguably done more, that is not

---

[1] This holding is not an anomaly. *See Lipscomb v. Ill. Dep't of Corr.*, No. 13-3389-CSB-DGB, 2014 U.S. Dist. LEXIS 37080, at *6 (C.D. Ill. Mar. 12, 2014) (summarizing the vast authority holding that a defendant's failure to follow its own procedures does not establish deliberate indifference); *Winkler v. Madison Cty.*, 893 F.3d 877, 894 (6th Cir. 2018) ("[T]he failure to follow internal policies does not alone establish that an individual acted with deliberate indifference."); *Shakur v. Ryan*, No. CIV 14-2318-TUC-CKJ, 2015 U.S. Dist. LEXIS 114628, at *11-12 (D. Ariz. Aug. 25, 2015) ("Thus, [plaintiff's] allegations that [defendants] may have deviated from their established policies does not adequately allege deliberate indifference."); *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) ("A failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference.").

enough to establish clearly unreasonable action. *Id.* Simply put, "[w]hile Title VI prohibits schools from engaging in unlawful discrimination, it does not require them to implement specific policies or to respond to discrimination in a particular manner." *Doe v. L.A. Unified Sch. Dist.*, No. 2:16-cv-00305-CAS(JEMx), 2016 U.S. Dist. LEXIS 105790, at *14-15 (C.D. Cal. Aug. 8, 2016).

Plaintiff's reliance on *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996), is misplaced. *Nabozny* involved an equal protection claim. *Id.* at 453. The Seventh Circuit determined that the school had an established <u>practice</u> of aggressively punishing male-on-female battery and harassment, but that it ignored claims of male-on-male battery and harassment. *Id.* at 455. So, when the court spoke of "departures from established practices," it was referring to the departure from the practice of even-handedly "punishing perpetrators of battery and harassment," creating different practices for different genders, i.e., an equal protection violation. *Id*.

Likewise, *Siewert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942 (S.D. Ind. 2007), is equally inapplicable. The *Siewert* court similarly discussed departures from disciplinary practices in the context of equal protection, not a hostile educational environment claim. *Id*. at 952. In analyzing deliberate indifference, the court did not consider whether internal policies were followed. *Id.* Neither *Nabozny* nor *Siewert* support Plaintiff's claim. Plaintiff's arguments about whether the District followed a policy is irrelevant to whether she can show deliberate indifference.

> **2. Even if the District's anti-discrimination and harassment policy was relevant, Plaintiff completely mischaracterizes what the policy requires.**

Plaintiff completely mischaracterizes the anti-discrimination and harassment policy. The District has a policy titled "Discrimination and Harassment Prohibited." [ECF 44-2].[2] Plaintiff

---

[2] The District has a related policy titled "Bullying Prohibited" which prohibits bullying and/or hazing within District schools. [ECF 44-3].

claims that the District did not follow this policy in investigating her claims. Plaintiff, however, presented no evidence that she made a complaint that would trigger this process. *See id.*

Plaintiff argues that any time an allegation of harassment comes to the District's attention it is required to invoke the policy, but there is nothing in the language of the policy or the record to support that claim. There is absolutely nothing in the policy that prohibits the District from investigating claims of harassment on a building level and immediately handling the situation when it is brought to the District's attention. It would be unreasonable to create a process where administrators could not immediately address claims of harassment without waiting for the filing of a formal complaint. Plaintiff's arguments concerning this policy should be disregarded by the Court as they are irrelevant to summary judgment.

### B. The Undisputed Material Facts Demonstrate That The District Did Not Act In A Clearly Unreasonable Manner In Response To Any Of Plaintiff's Claims.

Plaintiff concedes that her entire case is limited to seven allegations over a four-year period that she labels as peer-on-peer harassment. *See* [ECF 64, p. 8]; [ECF 65, pp. 14-15, ¶¶ 10-11]. Plaintiff claims that there are disputed issues of fact as to what the District did to investigate and discipline the offenders, but none of the claimed disputes are genuine or material. Plaintiff offers nothing to carry her burden of demonstrating clearly unreasonable action in violation of Title VI.

#### 1. The undisputed facts show that the October 16, 2017 incident was investigated, and that discipline was meted out.

It is undisputed that around October 16, 2017 the District became aware that Plaintiff received an inappropriate email using a racial slur. Ms. Lloyd immediately investigated and determined who had sent the message. [ECF 65, pp. 15-16, ¶¶ 12-19]. Plaintiff attempts to manufacture a disputed issue of fact by claiming that there is insufficient evidence to show that the offending student was disciplined. This argument is completely unfounded.

5

Ms. Lloyd authenticated the District's record of this incident, a Behavior Detail Report. [ECF 42, 42-2]. That record shows that the student received an in-school suspension. [ECF 42-2]. To further substantiate the discipline, the District submitted authenticated attendance records that demonstrated that she was suspended. *See* [ECF 44, 44-7].[3] Plaintiff also testified that she overheard other students talking about the fact that this student had been suspended. S.Q. Dep. [ECF 54] 7:2-15. Plaintiff attempts to dispute whether the student was disciplined, but she only points to Ms. Lloyd's deposition testimony related to a different incident.[4]

Whether the student apologized to Plaintiff is also immaterial. The student was disciplined with a suspension, and there is no requirement that an apology be a part of the discipline. Courts do not second guess the level and type of discipline imposed. *See Chivers*, 423 F. Supp. 2d at 850. Plaintiff's mother also testified that the apology was made. Crumble Dep. [ECF 49] 24:6-21.

Finally, it is undisputed that regardless of the discipline issued, after the District investigated the incident and acted, the student never again engaged in harassing conduct. [ECF 65, p. 17, ¶ 23]. Plaintiff's claim that there is a dispute as to whether the District acted in response to this incident is contradicted by her own admissions and the undisputed record.

        **2.    The undisputed facts show that the February 8, 2019 incident was investigated, and that discipline was meted out.**

It is undisputed that around February 8, 2019, S.Q. complained to her teacher that a student wrote a racially offensive word on a whiteboard and then erased it. [ECF 65, p. 18, ¶¶ 29-33]. It is also undisputed that the teacher notified the principal, Mr. Comiskey, and he immediately

---

[3] Plaintiff does not challenge the admissibility of these records.
[4] Plaintiff's entire argument regarding the October 16, 2017 incident is incorrectly premised around Ms. Lloyd's deposition testimony about a different incident on February 8, 2019 involving the writing of a racial slur on a whiteboard. *See* Lloyd Dep. [ECF 51] 68:3-69:14.

6

investigated. *Id.* Mr. Comiskey interviewed the offending student and got him to admit to his misconduct. *Id.* The student was issued a one day in school suspension for his misconduct.

Plaintiff attempts to dispute that the student was suspended, but this argument is again based on speculation that is contradicted by admissible evidence. Mr. Comiskey authenticated the Behavior Detail Report. *See* [ECF 43, 43-3]. The discipline was independently verified through that student's attendance records. *See* [ECF 44, 44-7]. Mr. Comiskey's imperfect recollection of details during his deposition almost three years later does not create a disputed issue of fact. A lack of knowledge about whether something happened does not create a disputed issue of fact that contradicts admissible documents. *Gilbert v. Am. Airlines, Inc.*, No. 01 C 3088, 2004 U.S. Dist. LEXIS 109, at *10 n.9 (N.D. Ill. Jan. 6, 2004).

Plaintiff's disagreement with how Mr. Comiskey performed his investigation, or what discipline he issued, is irrelevant. The reasonableness is borne out, again, by the undisputed fact that this student never again directed a racial slur to Plaintiff. [ECF 65, p. 19, ¶ 36].

### 3. The undisputed facts show that the March 2019 incident was not timely reported.

Plaintiff alleged that in March 2019 while in middle school, after her teacher turned off the lights another student said, "where did Tink go." [ECF 65, pp. 19-20, ¶ 40]. Plaintiff admits that this was not reported to anyone in the District until her mother mentioned it to the superintendent when she was in high school. *Id.* at ¶¶ 41-42.

Plaintiff's suggestion that the District's decision to not investigate an isolated, insensitive comment one to two years later is deliberate indifference is nonsensical and relies upon a distortion of the record. It is not clearly unreasonable to forgo an investigation of a minor incident that

7

occurred a year or two prior.[5] While the comment was insensitive, it was hardly sufficient on its own to constitute racial harassment. *See King v. E. Shore Water, LLC*, No. SKG-11-1482, 2012 U.S. Dist. LEXIS 107300, at *72 (D. Md. July 31, 2012) (explaining that comments about African American women's hair "clearly relate[d] to Plaintiff's race" and were "ignorant and insensitive," but they are not egregious enough to establish severity or pervasiveness).

Plaintiff cannot claim that the teacher "must have" heard the comment as she has no personal knowledge of what someone else heard, and this does not create a disputed issue of fact.[6] *See Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016). The Seventh Circuit has rejected the argument that because teachers are closely monitoring students, they "must have noticed" inappropriate behavior. *See Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003). Nor can Plaintiff create an issue of fact through her own sham affidavit.[7]

### 4. The undisputed facts show that the October 19, 2019 incident was investigated and that going forward the student never used a slur.

In 2019 Plaintiff complained to the associate principal, Mr. Bestor, that a student used the "N word" in her presence. Plaintiff argues that Mr. Bestor did not "really" investigate this claim but that is belied by his testimony and his investigatory notes. [ECF 46-1]. Plaintiff's only real complaint is the way Mr. Bestor investigated the complaint and his decision to not issue discipline to the student when there was conflicting evidence on whether she used a racial slur.[8]

---

[5] As pointed out in the District's response to Plaintiff's Proposed Findings of Fact, Ms. Crumble's sham affidavit cannot create a disputed issue of fact. *See* Defendant's Response Plaintiff's Proposed Findings of Fact, ¶ 97.
[6] S.Q.'s declaration supporting this claim is an inadmissible sham affidavit. In her deposition testimony S.Q. testified that the teacher was at the front of the room by the door, turning off the lights and that she and the student who made the comment were in the back of the room. S.Q. Dep. 10:15-11:6. She also testified that she "figured" the teacher heard the comment, but never mentioned it to her. S.Q. Dep. 10:8-14. This contradicts her declaration that the teacher was two feet from the commenter and "must" have heard the comment. She offers no explanation for the conflict.
[7] *See* Defendant's Response Plaintiff's Proposed Findings of Fact, ¶ 96.
[8] Plaintiff claims that Mr. Bestor believed that at some point this student had used the "N word", but even if he had a suspicion, that does not change the fact that there were contradictory accounts, and he could not substantiate the claim.

The law is clear that the disagreement with a disciplinary decision cannot establish deliberate indifference. *See Jauquet*, 2020 U.S. Dist. LEXIS 153636, at *19 (citing *Davis*, 526 U.S. at 648). Again, after Mr. Bestor's interactions with this student, Plaintiff confirmed that she never used a racial slur in Plaintiff's presence or otherwise harassed her. [ECF 65, p. 23, ¶ 59]. While there was no discipline, the investigation itself produced the intended result of terminating future inappropriate action.

### 5. The undisputed facts show that the October 21, 2019 incident was investigated, and that discipline was meted out.

It is undisputed that Mr. Bestor was notified that a threatening comment was made to a racially diverse group of students including S.Q., and that he investigated and confirmed what had occurred. [ECF 65, pp.23-25, ¶¶ 60-61, 63-70]. The only issue Plaintiff appears to take with the District's action was that "it was not properly investigated." [ECF 64, p. 15]. This dispute is based on Plaintiff's faulty assumption that the District was required to investigate "at the District level" and that Mr. Bestor was "the building level." This is an incorrect interpretation of the District's policy. One cannot establish deliberate indifference by merely showing that a policy was not followed.

It is undisputed that the District investigated this claim, determined that the student's conduct was inappropriate, issued the offending student a one day suspension, and contacted the student's mother to discuss the transgression. *See* [ECF 46, 46-3, 44-7]; [ECF 65, p. 26, ¶ 74]. The were no future issues with this student. [ECF 65, p. 26, ¶ 75]. This does not establish deliberate indifference.

9

### 6. The undisputed facts show that the October 28, 2019 incident was investigated, and that discipline was meted out.

It is undisputed that Plaintiff provider her principal, Ms. Kaminski, with a copy of a Snapchat photo with a racially offensive word written on a student's face. Ms. Kaminski immediately investigated. [ECF 65, pp. 26-27, ¶¶ 76-79]. The Behavioral Detail Report documenting this incident was properly authenticated by Ms. Kaminski and the student's attendance records confirm the discipline. [ECF 45, 45-6, 44-7]. Plaintiff's disagreement with how the investigation was performed or the level of discipline imposed is irrelevant; especially since its undisputed that this student never again harassed Plaintiff. [ECF 65, p. 27, ¶ 82].

### 7. The undisputed facts show that the September 3, 2020 incident was investigated, and that discipline was meted out.

It is undisputed that on September 3, 2020, Mr. Bestor became aware of a racially charged Snapchat that was sent to Plaintiff. [ECF 65, pp. 28- 29, ¶¶ 90-97]. Mr. Bestor completed an investigation within 24 hours, and he uncovered what happened and who was responsible. *Id.* It is undisputed that the offending students were issued three-day suspensions and were referred to the Sheriff's Department. *Id.* at pp. 30-31, ¶¶ 101-102. It is also undisputed that after this incident, there were never again other incidents of harassment. *Id.* at p. 32, ¶¶ 1074-108.

Plaintiff simply takes issue with the fact that the matter was not investigated through the formal complaint procedure, but this is a non-starter. Plaintiff's attempt to create an artificial distinction between "building level" and "District level" investigations is non-sensical. A school district is a government entity that can only act through its agents, and they are necessarily the same. *See Bldg. & Constr. Trades Council v. Waunakee Cmty. Sch. Dist.*, 221 Wis. 2d 575, 584, 585 N.W.2d 726, 730 (Ct. App. 1998).

### C. It Is Undisputed That The District's Remedial Measures Worked As No Student Ever Engaged In Future Harassing Conduct.

Plaintiff's argument that the District permitted harassment to escalate is completely flawed because each incident involved different students at different times and each disciplinary decision ended the harassment involving those students. While nominal or ineffectual action can be inferred as deliberate indifference under some circumstances, *see Crumble*, 2021 U.S. Dist. LEXIS 83002, at *17, there is no good faith argument that the District's actions were nominal or ineffectual. At its core, Plaintiff's "escalation" argument is nothing more than disagreement with the discipline issued by the District, and "[t]he Supreme Court has made clear that courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at *11 (internal citations omitted).

Plaintiff claims *Doe v. Galster*, 768 F.3d 611 (7th Cir. 2014) supports her claim that the District's actions were ineffectual based on escalating incidents. *Galster* involved claims of peer-on-peer harassment involving the same three students. *See id.* at 614-16. When the court spoke of escalating mistreatment it was addressing the repeated, related conduct involving the same three students. *Id.* at 620. Here, no student ever repeated much less escalated any inappropriate conduct.

Plaintiff also cites *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012), which was relied on in *Galster*. *Zeno* involved a small school where for four years plaintiff was verbally harassed ("[C]alling him a 'nigger' nearly every day.") *Id.* at 667. He was also subject to constant physical violence and death threats. *Id.* at 669. *Zeno* does not assist Plaintiff. In addition to the factual differences, it is an out of circuit decision with limited precedential value. The standard applied by the *Zeno* court (the Sixth Circuit's iteration of deliberate indifference)[9] has been

---

[9] The Second Circuit relied on the standard that: "Responses that are not reasonably calculated to end harassment are inadequate." *Zeno*, 702 F.3d at 669. This is not the law in this circuit. *See Bowe*, 2018 U.S. Dist. LEXIS 19671, at

11

outright rejected by courts in the Seventh Circuit. *See C.S.*, 843 F. Supp. 2d at 913; *Bowe v. Eau Claire Area Sch. Dist.*, No. 16-cv-746-jdp, 2018 U.S. Dist. LEXIS 19671, at *8-9 (W.D. Wis. Feb. 7, 2018). Finally, even if *Zeno* could be considered, the consistency and severity of the harassment in that case far exceeds anything close to the acts of alleged harassment here.

There is no material dispute that the District investigated the six incidents that were timely brought to its attention and issued discipline in the five circumstances where the allegations were substantiated.[10] It is undisputed that no student ever repeated inappropriate behavior after the District's intervention. *See, e.g.,* [ECF 65, pp. 14-32, ¶¶ 23, 25, 36, 59, 75, 82, 107]. It is also undisputed that the District engaged in initiatives to improve race related issues and directly interacted with Ms. Crumble to address her concerns. *See, e.g.,* [ECF 65, pp. 17-33, ¶¶ 27, 47-49, 84-89, 111]. As this Court has explained, "[a] school district is not liable under Title VI simply because one of its students was subjected to inexcusable racial harassment by her peers." *Crumble*, 2021 U.S. Dist. LEXIS 83002, at *9. That is all Plaintiff has shown.

This case only involves seven unrelated one-time-only incidents, and two of them were not race-based. No offending student ever reoffended. The mere fact that different students engaged in misconduct months or years later does not make the District's response clearly unreasonable. *See Davis*, 526 U.S. at 648-49 (rejecting a standard where school district's must "remedy" peer harassment and "ensure that students conform their conduct to certain rules"); *Banks v. Baraboo Sch. Dist.*, No. 20-cv-36-wmc, 2020 U.S. Dist. LEXIS 176620, at *8 (W.D. Wis. Sep. 25, 2020)

---

*8 (rejecting the argument that "liability is assigned whenever a school does not make a reasonable effort to remedy the harassment").

[10] The Court should disregard Plaintiff's attempts to rely on the Affidavit of Bruce Levenberg [ECF 65-4] to support a fiction that she was subjected to constant harassment as that affidavit is inadmissible and the claims contained therein are contradicted by the undisputed facts in this case.

12

("Importantly, neither Title VI nor Title IX tasks schools receiving federal funds with the arguably impossible task of maintaining an environment free of all racism, sexism, or bullying.").

## II. THE UNDISPUTED FACTS SHOW THAT PLAINTIFF WAS NOT SUBJECTED TO SEVERE OR PERVASIVE RACIAL HARASSMENT THAT DENIED HER EQUAL ACCESS TO EDUCATION.

Plaintiff fails to carry her burden of establishing severe and pervasive racial harassment that denied her equal access to education. "To find that race . . . based hostility is actionable, the Court must first find that the hostility is so severe, pervasive, and objectively offensive that it has a concrete, negative effect, on the victim's access to education." *N.K.*, 965 F. Supp. 2d at 1033 (citing *Gabrielle M.*, 315 F.3d at 821). This inquiry requires the Court to determine that the "alleged hostility was, in fact, based upon race." *Id.* Then, the Court must also find that the alleged harassment is severe and pervasive enough to constitute illegal discrimination. *See Hendrichsen v. Ball State Univ.*, No. IP 01-1630-C-B/S, 2003 U.S. Dist. LEXIS 3710, at *11-13 (S.D. Ind. Mar. 12, 2003). This inquiry has an objective and subjective viewpoint, "considering not only the actual effect of the harasser's conduct on his victim, but also the effect similar conduct would have had on a reasonable person in the plaintiff's position." *Id.*

To meet this standard, "[t]he harassment must be severe and repeated . . . and must have a systemic effect." *Adusumilli v. Ill. Inst. of Tech.*, No. 98-3561, 1999 U.S. App. LEXIS 17954, at *4 (7th Cir. July 21, 1999) (internal citations omitted). Thus, isolated, sporadic incidents, engaged in by different individuals cannot be linked together to establish severe and pervasive conduct. *See id.* ("Since in each instance the conduct ceased as soon as it occurred, and was not repeated, we are not convinced that either incident involved 'pervasive' and 'offensive' harassment of the type that would be actionable under Title IX."); *Students & Parents for Privacy v. United States Dep't of Educ.*, No. 16-cv-4945, 2016 U.S. Dist. LEXIS 150011, at *112 (N.D. Ill. Oct. 18, 2016)

13

("[I]solated or sporadic conduct is not the kind of severe, pervasive, objectively offensive conduct that has been held to violate Title IX."). Brief incidents involving different offenders, on different dates, do not have a systemic effect on one's access to education. *Werth v. Bd. of Dirs.*, 472 F. Supp. 2d 1113, 1129 (E.D. Wis. 2007).

Plaintiff has not shown severe and pervasive conduct or a concrete negative effect on her education. As explained by the District, the March 2019 incident where a middle school student allegedly said "where did Tink go" cannot be found to be racially motivated. *See C.S.*, 843 F. Supp. 2d at 907 (citing *Davis*, 526 U.S. at 652). Likewise, the October 21, 2019 incident where a student made a threat to a multi-racial group of students had nothing to do with race. That leaves five alleged incidents over a four-year period that arguably involve race.

Plaintiff claims that these incidents were connected because some of them took place within a nine-month period, but she completely ignores that these incidents were all engaged in by different students and involved different minor acts. Relatively minor incidents separated in time are not enough to show a systemic effect on a plaintiff's access to education. *See Werth*, 472 F. Supp. 2d at 1129 (citing *Davis*, 526 U.S. at 652-53).

Plaintiff claims that she can show severe and pervasive conduct because she has depression, engaged in self-harm, and feels helpless. [ECF 64, p. 30]. She ignores, however, that the existence of mental health problems is not dispositive of showing a denial of educational benefit. *See Gabrielle M.*, 315 F.3d at 823 ("[T]here is no evidence that Gabrielle was denied access to an education. Although she was diagnosed with some psychological problems, the record shows that her grades remained steady and her absenteeism from school did not increase."); *Hayut v. State Univ. of New York*, 352 F.3d 733, 745 (2d Cir. 2003) (explaining that the impact on a victim's psychological well-being "is not dispositive on the issue of severity").

14

As the court explained in *Gabrielle M.*, "harassment must have a 'concrete, negative effect' on the victim's education." 315 F.3d at 823 (citing *Davis*, 526 U.S. at 654). "Examples of a negative impact on access to education may include dropping grades . . . becoming homebound or hospitalized due to harassment . . . or physical violence." *Id.* (internal citations omitted). Plaintiff does not point to dropping grades, becoming homebound, being hospitalized, or any physical violence. Instead, Plaintiff plans on attending college. S.Q. Dep. 5:17-15. Plaintiff described her grades last year (2020-21) as being A/B, and that she is hopeful that she can maintain those same grades this year (2021-22). S.Q. Dep. 51:18-25. When the option to return to in-person learning became available in January 2021, Plaintiff "begged mom" to allow her to return to in-person classes. S.Q. Dep. 43:12-23. None of this demonstrates a negative impact on access to education.

All Plaintiff points to is her subjective feeling of being "helpless and in despair." That alone is not sufficient to show a negative impact on access to education. *Gabrielle M.*, 315 F.3d at 823. Plaintiff also ignores that her depression and acts of self-harm predated her claims of harassment. Levenberg Dep. [ECF 58] 28:8-16. Plaintiff displayed self-harm behaviors in seventh grade and the District proactively provided her with mental health counseling in seventh and eighth grade. S.Q. Dep. 27:6-29:12.

Plaintiff also ignores that her mental health is affected by the fact that she was sexually assaulted by "classmates and a family member" when she was younger, and that she was physically and emotionally abused by her father. [ECF 65-5, p. 10]; Crumble Dep. 60:1-22. While Plaintiff has mental health issues, she fails to offer anything to show the Court that her mental health issues were caused by the District's alleged deliberate indifference to harassment or that it was severe and pervasive harassment that denied Plaintiff an educational benefit.

15

## **CONCLUSION**

For the reasons set forth above, the District respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated this 31st Day of May, 2022.

                                          KOPKA PINKUS DOLIN PC
                                          Attorneys for Defendant

                                          By:    /s/ Ronald S. Stadler
                                                       Ronald S. Stadler
                                                       State Bar No. 1017450
                                                       Jonathan E. Sacks
                                                       State Bar No. 1103204

N19W24200 Riverwood Dr, Suite 140
Waukesha, WI 53188-1191
telephone: 847-549-9611
facsimile: 847-549-9636
e-mail: rsstadler@kopkalaw.com
       jesacks@kopkalaw.com