# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

S.Q., by her next friend EBONY CRUMBLE,

        Plaintiff,

        v.                          **Case No. 20-CV-1585**

KETTLE MORAINE SCHOOL DISTRICT,

        Defendant.

# DECISION AND ORDER

## 1. Procedural History

Plaintiff S.Q. alleges that between October 1, 2017, and September 3, 2020, she was subject to seven instances of racial harassment[1] by peers when she was a student at Kettle Moraine Middle School and Kettle Moraine High School. (ECF No. 65, ¶ 10.) A different peer was allegedly responsible for each incident. S.Q. has sued the Kettle Moraine School District, alleging that its response to these incidents violated Title VI of the Civil Rights Act of 1964.

---

[1] The parties in their proposed findings of fact do not identify S.Q.'s race. They do, however, state that S.Q.'s mother "was a parent of a minority student." (ECF No. 65, ¶ 88.) In her complaint S.Q. identifies herself as African American. (ECF No. 1, ¶ 26.)

S.Q. narrowly survived Kettle Moraine's earlier motion to dismiss. *Crumble v. Kettle Moraine Sch. Dist.*, No. 20-CV-1585, 2021 U.S. Dist. LEXIS 83002 (E.D. Wis. Apr. 30, 2021).[2] S.Q.'s response to Kettle Moraine's motion to dismiss rested largely on the mistaken assertion that Kettle Moraine was liable under Title VI because it failed to eliminate peer racial harassment. *Id.* at *13. The court denied Kettle Moraine's motion because S.Q. alleged that it was with respect to only two out of seven incidents of racial harassment that Kettle Moraine investigated and disciplined the actors. *Id.* at *15-16. However, the court granted Kettle Moraine's motion to strike portions of her complaint when she did not respond to that aspect of the defendant's motion. *Id.* at *8. The court also dismissed S.Q.'s constitutional claim against the district because the complaint failed to allege a plausible basis for the district's liability. *Id.* at *18-*23.

Kettle Moraine also moved to dismiss "Kettle Moraine High School" and "Kettle Moraine Middle School" as defendants, noting that they were buildings and not suable entities separate from the district. (ECF No. 12 at 21.) S.Q. did not respond to that aspect of Kettle Moraine's motion, but after the briefing on the motion was completed S.Q. moved to voluntary dismiss the buildings as defendants. (ECF No. 15.)

S.Q. sought to file an amended complaint where she named the school board and its members as defendants, but the proposed amended complaint was devoid of any

---

[2] S.Q.'s mother, Ebony Crumble, was previously a plaintiff. But following Kettle Moraine moving for summary judgment and arguing that her claim was frivolous (ECF No. 37 at 28), the parties stipulated to dismiss her as a plaintiff (ECF Nos. 60; 61).

allegation as to what each defendant allegedly did or failed to do that injured S.Q. *Crumble*, 2021 U.S. Dist. LEXIS 83002, at *7. Consequently, the court denied the motion to file an amended complaint. *Id.* at *7-8. The court subsequently denied S.Q.'s renewed motion to file an amended complaint adding substantive due process and equal protection claims. *Crumble v. Kettle Moraine Sch. Dist.*, No. 20-CV-1585, 2021 U.S. Dist. LEXIS 124104 (E.D. Wis. July 2, 2021).

Kettle Moraine has now moved for summary judgment. (ECF No. 36.)

## 2. Applicable Law

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." It is a companion of Title IX, which prohibits discrimination based on sex. Thus, courts may apply principles articulated with respect to Title IX to claims under Title VI. *Doe v. Smith*, 470 F.3d 331, 338 (7th Cir. 2006).

"The Supreme Court has set a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). A school district is not liable under Title VI simply because one of its students was subjected to inexcusable racial harassment by her peers. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Courts … must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education ….

*Id.* at 651-52. "The harassment must further have a 'concrete, negative effect' on the victim's education, which may include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, or physical exclusion from a school resource." *C.S. v. Couch*, 843 F. Supp. 2d 894, 907 (N.D. Ind. 2011) (citing *Davis*, 526 U.S. at 650-51; *Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003); *S.G. v. Rockford Bd. of Educ*, No. 08 C 50038, 2008 U.S. Dist. LEXIS 95522, 2008 WL 5070334, at *4 (N.D. Ill. Nov. 24, 2008); *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010)).

Moreover, a school district can be held liable for peer-on-peer racial harassment only if the district "acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis*, 526 U.S. at 633; *see also Neth. Ins. Co. v. Macomb Cmty. Unit Sch. Dist. No. 185*, 8 F.4th 505, 508 (7th Cir. 2021). Deliberate indifference is a high standard. It reflects a callousness on the part of the defendant beyond mere negligence but short of purposeful conduct. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). It is equivalent to reckless disregard. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). The

defendant must "know[] or should know that consequences will ensue because those consequences were an obvious result of its conduct." *Wilson v. Cook Cty.*, 742 F.3d 775, 781 (7th Cir. 2014).

Once a school has notice of peer-on-peer racial harassment, it must act. *See Gabrielle M.*, 315 F.3d at 824. But officials are given wide discretion as to how to respond. *Davis*, 526 U.S. at 648; *Galster*, 768 F.3d at 621. A school need not abide a victim's demands for a particular resolution of her complaint. *Davis*, 526 U.S. at 648. Nor is a district liable simply because it could have handled the matter differently or better. *Jauquet v. Green Bay Area Catholic Educ.*, No. 20-C-647, 2020 U.S. Dist. LEXIS 153636, at *19 (E.D. Wis. Aug. 24, 2020).

In assessing the reasonableness of school officials' response to racial harassment, the court must be mindful that "a federal court is rarely the proper forum for addressing and resolving disputes over the proper level of school discipline. The Supreme Court has made clear that 'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'" *Jauquet*, 2020 U.S. Dist. LEXIS 153636, at *20 (quoting *Davis*, 526 U.S. at 648; citing *Estate of Lance v. Lewisville Indep. School Dist.*, 743 F.3d 982, 996 (5th Cir. 2014) ("Judges make poor vice principals …."); *see also Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 809 (7th Cir. 2021) (quoting *Johnson v. Northeast Sch. Corp.*, 972 F.3d 905, 912 (7th Cir. 2020)).

Because the matter is before the court on the defendant's motion for summary judgment, the court views the evidence in the light most favorable to the plaintiff and draws all reasonable inferences in her favor. *Liberty Mut. Fire Ins. Co. v. Clayton*, 33 F.4th 442, ___, 2022 U.S. App. LEXIS 12317, *6-*7 (7th Cir. 2022). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact.'" *Id* at *6 (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. at *6 (quoting *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (internal quotation marks omitted)).

In appropriate cases a court may conclude as a matter of law at the summary judgment stage that a school district's response was not deliberately indifferent. *Davis*, 526 U.S. at 649.

### 3. Facts

On October 16, 2017, when S.Q. was in sixth grade, she "received a racially inappropriate email from another student." (ECF No. 65, ¶ 13.) A teacher notified the associate principal, Laura Lloyd, of the incident. (ECF No. 65, ¶ 13.) Lloyd and the principal, Michael Comiskey, investigated, identified the student who sent the email,

learned it was a friend of S.Q.'s, and disciplined the student with a one-and-a-half day in-school suspension.[3] (ECF No. 65, ¶¶ 16-21.)

On February 8, 2019, when she was in eighth grade, "S.Q. complained to her teacher that another student wrote a racially offensive word on a whiteboard and showed it to S.Q. before erasing it." (ECF No. 65, ¶ 29.) Comiskey investigated, the student admitted doing so, and Comiskey imposed a one-day in-school suspension as discipline. (ECF No. 65, ¶¶ 30-34.) However, Comiskey cannot personally confirm that the student actually served the suspension. (ECF No. 52 at 23, 88:23-89:1.)

In March of 2019, when S.Q.'s science teacher, Allyson Wroblewski, turned off the lights in the classroom, a student said, "Where did Tink go?"[4] referring to S.Q. by her nickname. (ECF No. 65, ¶¶ 37, 40.) Wroblewski testified she did not hear the comment. (ECF No. 65, ¶ 44.) S.Q. states in a declaration that Wroblewski must have been aware of the comment because she made eye contact with S.Q. immediately after the comment was made. (ECF No. 62, ¶ 4.) Neither S.Q. nor her mother reported the incident to Kettle Moraine administrators until at least nearly a year later. (ECF No. 65, ¶ 42.) The student was not disciplined.

_____

[3] S.Q. questions whether the student actually served the suspension (ECF No. 65, ¶ 21), but the portions of the record she cites in support of her dispute do not support her assertions. S.Q. cites portions of Lloyd's deposition where she was discussing a different incident. (ECF No. 51 at 18-20.) With respect to the email incident, Lloyd testified that the student served the suspension by sitting in the office and working on schoolwork. (ECF No. 51 at 12, 44:4-22.)

[4] The parties generally state that the student said, "Where did Tink go?" (*See, e.g.*, ECF No. 65, ¶¶ 37, 40.) The record, however, is inconsistent. At other points the student is reported as having said, "Where is Tink?" (*see, e.g.*, ECF No. 71, ¶ 54) and, "Hey, where's Tink? I can't see her," (ECF No. 49 at 18, 71:2-3).

Around October 19, 2019, when she was a freshman in high school, S.Q. reported to the high school assistant principal, Justin Bestor, that "that a female student had used the 'N word' in the presence of a group of girls." (ECF No. 65, ¶ 53.) Although S.Q. was present, the slur was not directed at her. (ECF No. 65, ¶ 54.) Bestor investigated and, although he personally believed that the student had used the word, was unable to corroborate the report. Without corroboration, he concluded he could not discipline the student. (ECF No. 65, ¶¶ 54-58.)

A couple of days later, on October 21, 2019, the sister of the girl who allegedly used the racial slur in S.Q.'s presence made a comment to S.Q. and two other girls along the lines of, "If you hurt my sister, I will hurt you." (ECF No. 65, ¶¶ 61-69.) In investigating, Bestor learned that this incident related to a conflict among girls on the cheerleading team that included girls "using the 'N word.'" (ECF No. 65, ¶ 64.) Bestor imposed a one-day suspension on the girl who made the threat. (ECF No. 65, ¶ 73.) Again, S.Q. questions whether the student actually served the suspension because a "suspension notification letter" was not provided in discovery. (ECF No. 65, ¶ 73.)

About a week later, on October 28, 2019, a student sent a Snapchat message to S.Q. "with a picture of himself with an offensive word (the 'N word') written across the picture." (ECF No. 65, ¶ 77.) S.Q. provided a copy of the message to Beth Kaminski, principal of Kettle Moraine High School, who investigated and imposed a one-and-a-half day out-of-school suspension on the student. (ECF No. 65, ¶¶ 77-80.) S.Q. disputes

this proposed finding of fact, asserting, "Kaminski cannot confirm that the student served the 1.5 day suspension." (ECF No. 65, ¶ 80.) What Kaminiski actually testified to at the portion of the record cited by S.Q. is, "I have no reason to believe that he didn't serve it." (ECF No. 48 at 8, 28:10-11.)

About a year later, on September 3, 2020, "Bestor was advised that two male students sent an inappropriate, racially charged message to S.Q. by Snapchat (using the N-word)." (ECF No. 65, ¶ 90.) Bestor investigated, identified the students responsible, suspended each of them for three days, and referred the matter to the Waukesha County Sheriff's Department, which charged each of them with disorderly conduct. (ECF No. 65, ¶¶ 90-101.)

### 4. Analysis

A school district is liable under Title VI only if it receives federal funds. *Davis*, 526 U.S. at 638 (citing 20 U.S.C. § 1681(a)). Kettle Moraine contends that S.Q. has failed to adduce evidence that it receives any federal funds. (ECF No. 37 at 11.) After Kettle Moraine raised the issue in its motion for summary judgment, S.Q. submitted what purports to be the district's 2019-20 Financial Report. (ECF No. 65-2.) However, this report (like all of S.Q.'s evidentiary submissions) is not authenticated by any declaration or affidavit, and thus its source is unclear.

The only proposed finding of fact that S.Q. offers on the matter is, "Kettle Moraine is a recipient of federal funding," which she supports by citing to "Exhibit B-

Kettle Moraine Financial Report 2, 15-17." (ECF No. 71, ¶ 18.) Pages 15 through 17 are long tables of revenues and expenses. (ECF No. 65-2 at 15-17.) S.Q. does not point to any line item that she alleges establishes Kettle Moraine's receipt of federal funding.

Kettle Moraine responds to this proposed finding of fact as follows:

> Disputed that Plaintiff has carried her burden on this issue. The cited exhibit does not directly identify federal funds received by the District. Pass-through grants from the state may constitute receipt of federal funds if they are traceable back to the federal source and the expenditure of those funds at the local level relates to the "structure, operation, and purpose" of the original federal grant. *United States v. Atalig*, No. 1:18-cr-00013, 2020 U.S. Dist. LEXIS 159450, at *14 (D. N. Mar. I. Aug. 31, 2020).

(ECF No. 71, ¶ 18.) Notably, Kettle Moraine does not actually dispute that it receives federal funds or dispute the authenticity of the proffered annual report.

While the plaintiff has been sloppy in establishing this crucial element of her claim, the court nonetheless finds that she has adequately established that Kettle Moraine receives federal funds. For example, the annual report indicates that the district received "ESSA Grants - (Every Student Succeeds Act)" in 2017, 2018, and 2019, and it expected to continue to receive such grants in 2020 and 2021. (ECF No. 65-2 at 15.) The court is aware that the ESSA is a federal law that, in part, provides funding to schools. *See* U.S. Department of Education, Every Student Succeeds Act (ESSA), available at https://www.ed.gov/essa (last visited June 6, 2022).

As to the merits of S.Q.'s claim, Kettle Moraine argues that summary judgment is appropriate because no reasonable jury could find that it was deliberately indifferent to the harassment that S.Q. suffered.

With the exception of the March 2019 incident where the teacher turning off the lights led a student to comment, "Where did Tink go?", it is undisputed that Kettle Moraine investigated every incident of alleged harassment. All but one of those investigations ended with Kettle Moraine suspending the student responsible.

S.Q.'s speculation that maybe some of the students did not actually serve the suspensions imposed is insufficient to create a dispute of material fact. The court must make only *reasonable* inferences in favor of the plaintiff. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014). When an administrator imposes a suspension and this action is recorded in the district's "Behavior Detail Report," absent affirmative evidence that the punishment was not carried out, the only reasonable inference is that the student served the suspension. Neither the fact that the administrator did not have personal knowledge of the student serving the suspension nor the absence of a "suspension notification letter" is sufficient to support an inference that the student was not actually punished.

As to the October 19, 2019, incident, Bestor concluded that, without corroborating evidence, he could not take disciplinary action against a student. It is not appropriate for the court to second-guess an administrator's conclusion that he lacked

evidence sufficient to discipline a student. *See Davis*, 526 U.S. at 648. By all appearances, Bestor's assessment was reasonable. But even if it were not, a school district does not violate Title VI with acts (or inactions) that are merely negligent. *Johnson*, 972 F.3d at 912. S.Q. has not adduced facts that could lead a reasonable finder of fact to conclude that Bestor's assessment reflected deliberate indifference. *Cf. Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008) (finding that it was "not clearly unreasonable" for school to forego discipline in light of "problems of proof").

The only instance where Kettle Moraine failed to take any action was with respect to the March 2019 incident, when the science teacher turned off the lights. A dispute exists as to whether the teacher heard the student say, "Where did Tink go?" The teacher testified she never heard any such comment and was not otherwise made aware of it. (ECF No. 47 at 9, 30:10-11; 9, 33:4-8.) In response to Kettle Moraine's motion for summary judgment, S.Q. submitted a declaration wherein she states that the teacher was "standing less than two feet away from the perpetrator" and then made "direct eye contact" with S.Q. immediately after the class laughed at the comment. (ECF No. 62, ¶ 4.) This declaration is inconsistent with S.Q.'s deposition testimony, where she stated that the teacher was at the front of the classroom whereas S.Q. was "towards the back" of the classroom, with the student who made the comment at the table in front of her. (ECF No. 54 at 3, 10:15-11:6.) Consequently, S.Q.'s assertion that the teacher was "less

than two feet away" from the student who made the comment must be disregarded under the sham affidavit rule. *See James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020).

Nonetheless, S.Q.'s assertions that the class laughed and the teacher made eye contact with S.Q. after the comment are sufficient to support the inference that the teacher heard the comment. Because the court at summary judgment must construe the evidence in the light most favorable to the non-movant, the court assumes that the teacher heard the comment.

Kettle Moraine argues that there is insufficient evidence that this incident was racially motivated. (ECF No. 37 at 25.) It notes that S.Q. "changed seats constantly" in class, and thus it is plausible that the student did not intend, and the teacher did not understand, the student's comment to be a comment on her race. But, again, for purposes of summary judgment the court draws reasonable inferences in S.Q.'s favor and presumes that the statement reflected a racial animus.

However, inaction does not, by itself, support an inference of deliberate indifference. *Cf. Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 912 (7th Cir. 2020) (noting that negligence is insufficient to subject a school to liability). This is especially true when the teacher was not aware of any prior incident of racial harassment of S.Q, as was the case here. (ECF No. 47 at 9, 33:9-19.)

Moreover, S.Q. does not articulate how this incident was so severe as to deprive her of equal access to education. Even presuming that the incident caused S.Q. difficulty

in concentrating on or participating in school for a time, the incident was far too minor to give rise to a federal claim under Title VI. *See Davis*, 526 U.S. at 651-52 ("Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect."); *Galster*, 768 F.3d at 618 ("Federal law does not protect students from commonplace schoolyard altercations, including name-calling, teasing, and minor physical scuffles."). Given the objectively minor nature of this incident, and because there is no evidence that the teacher was aware that S.Q. had ever been previously subject to racial harassment, no reasonable finder of fact could conclude that the teacher's inaction was deliberately indifferent. Nor was the incident sufficiently severe to rise to the level of a violation of Title VI.

Consequently, because it responded with reasonable punishments when administrators concluded that the circumstances and evidence supported it, no reasonable finder of fact could conclude that Kettle Moraine was deliberately indifferent to any individual incident. Insofar as S.Q. is arguing that Kettle Moraine was nonetheless deliberately indifferent to the broad problem of racial harassment overall, again, no reasonable finder of fact could reach such a conclusion.

The fact that Kettle Moraine did not address these incidents under its anti-harassment policies, but instead handled them as general student disciplinary matters, does not support an inference of deliberate indifference or discriminatory intent.[5] *Cf. Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008) (an allegation that a school failed to investigate according to its policies "would sound in negligence, not deliberate indifference"); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) ("But just because Boyd allegedly failed to follow district policy does not mean that her actions were clearly unreasonable. A district's 'failure to comply with [its] regulations … does not establish the requisite … deliberate indifference." (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998) (alterations in original)).

*Nabozny v. Podlesny*, 92 F.3d 446, 455 (7th Cir. 1996), on which S.Q. relies (ECF No. 64 at 23), is distinguishable. In *Nabozny*, the school allegedly failed to take *any* action against the students who harassed and battered the plaintiff despite having a policy to punish perpetrators of battery and harassment. The Court of Appeals for the Seventh Circuit noted that a school's failure to act, despite a policy requiring action, supported an inference of discriminatory intent. *Nabozny*, 92 F.3d at 455 (citing *Village of Arlington*

---

[5] Notwithstanding the fact that some administrators may have believed that the incidents should have been investigated under the harassment policy (*see, e.g.*, ECF No. 71, ¶ 3), it does not appear that the policy applied. The policy states that, unless the complainant asks that the complaint be resolved on an informal basis, to begin the process the complainant "must submit a written complaint to the director or pupil services." (ECF No. 65-1 at 15-16.) It is undisputed that S.Q. never requested that any of her complaints be resolved on an "informal basis." (ECF No. 71, ¶ 6.) Nor is there any evidence she ever made a formal written complaint.

*Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)); *see also Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 952 (S.D. Ind. 2007) (finding school district's choice "to do nothing" in response to two death threats against a student, despite policy requiring action, "may evidence discriminatory intent").

Kettle Moraine, however, acted, and its actions were effective. No student harassed S.Q. more than once. And although remaining a student (ECF No. 65, ¶ 1), S.Q. has not alleged any harassment after the September 3, 2020, incident (ECF No. 65, ¶¶ 101-02). *Cf. Jauquet*, 996 F.3d at 808 (noting that the fact that the bullying ended supported the conclusion that the school was not deliberately indifferent). Under such circumstances, Kettle Moraine's failure to follow a particular policy cannot support an inference of discriminatory intent.

S.Q. also offers a confusing argument where she appears to assert that, because the incidents were addressed at the "building level," it was not actually the district that acted. Because only the school acted, the district could still be liable for inaction. (*See, e.g.*, ECF No. 64 at 2 ("Such failure further brings into question as to whether any actions that were taken in response to S.Q.'s allegations, were even district actions at all. The record and testimony has demonstrated that there is a difference between a school acting, as opposed to District actions."); ECF No. 64 at 3 ("[A] reasonable jury could conclude that the defendant policy on its face along with the defendant's admissions, provides the reasonable inference that the District *truly* never acted at all, recognizing

the distinction between individual school actors and the designated administrators whom the District authorized capacity to relegate [sic] district actions.") (emphasis in original); ECF No. 64 at 8 ("Each incident below further demonstrates that none of which were investigated by an authorized District representative, and therefore calls into question whether or not any aspect of the acts or omissions by said individuals were in-fact 'district actions.'"); ECF No. 64 at 17 ("While the defendants would like to boast of the disciplines issued by Bestor, such actions were not district actions.").)

But S.Q.'s argument overlooks the fact that her whole claim against the district rests on the premise that the administrators of the middle and high schools were agents of the district. *Cf. Galster*, 768 F.3d at 618 (noting that a district is liable only if it knew of the harassment). In effect, she argues that the school administrators were agents of the district for purposes of imputing to the district their knowledge of the harassment. But they somehow were not agents of the district when they investigated the harassment and disciplined the offenders.

Such an argument is without merit. As Kettle Moraine explained in its motion to dismiss, Kettle Moraine High School and Kettle Moraine Middle School are not separate from the district. (ECF No. 12 at 21.) The teachers and administrators at those schools are agents of the district and thus both their knowledge and actions in addressing harassment are imputed to the district.

S.Q.'s response brief also includes a heading that states, "The Districts [sic] Actions Were Clearly Unreasonable and Resulted in a Deprivation of S.Q.'s Constitutional Rights." (ECF No. 64 at 21.) However, as the court previously stated, the plaintiff has not adequately alleged any constitutional claim. *See Crumble*, 2021 U.S. Dist. LEXIS 83002, at *18-23; *Crumble*, 2021 U.S. Dist. LEXIS 124104.

Finally, S.Q. argues that Kettle Moraine was deliberately indifferent because it did not escalate its punishments in the face of repeated incidents. As an initial matter, the discipline that Kettle Moraine imposed was not trivial. A suspension, whether in or out of school, is no small matter. *Cf. Gabrielle M.*, 315 F.3d at 825 ("*Davis* disapproved of a standard that would force funding recipients to suspend or expel every student accused of misconduct."). Having started off by imposing significant sanctions, the district had little room for escalation. More importantly, every punishment imposed by Kettle Moraine was effective in deterring that student from repeating the harassment. No student harassed S.Q more than once.

S.Q. seems to be arguing that each offender should have received a progressively more severe punishment, not because of the offender's actions, but because of S.Q.'s repeated victimization. In other words, a first-time thief who steals from a victim that, unbeknownst to him, had been repeatedly victimized should receive a harsher sentence that accounts for the prior offenses. Such a theory likely would not satisfy due process in a criminal context nor in the context of public-school discipline.

While general deterrence may be one of the many aims in school discipline, confidentiality laws and rules, *see* Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; 34 C.F.R. Part 99, limit its applicability and effectiveness. In a school setting, other measures, such as clearly communicated expectations and rules, may be more effective general deterrents. And Kettle Moraine employed these methods. It had a clear anti-bullying policy that related to race-based bullying by students. (ECF No. 44-3.) It "held a special community conversation about, among other related topics, how to provide support for students of color" (ECF No. 65, ¶ 47), it "provided students with training on understanding, tolerance and related issues, including diversity and inclusion," which "was a District wide initiative to create a more inclusive learning environment for all student and staff," created a "Cultural Advisory Committee" that included S.Q.'s mother (ECF No. 65, ¶¶ 86-88), and it hired an educational consultant "to provide educational equity leadership development for the District administration and help facilitate diversity and equity initiatives during the 2020-2021 school year" (ECF No. 65, ¶ 111).

Against this backdrop, no reasonable finder of fact could conclude that Kettle Moraine violated Title VI by how it responded to the racial bullying that S.Q. suffered as a result of her peers' actions. Consequently, the court must grant Kettle Moraine's motion for summary judgment.

## 5. Conclusion

S.Q. was subject to seven instances of inexcusable racial harassment by her middle and high school peers. However, a school district is not liable for the acts of its students. Under Title VI, a school district is responsible only for its own actions or inactions.

Title VI does not require that school districts eliminate peer-on-peer harassment. *Gabrielle*, 315 F.3d at 825. It does not provide a cause of action for the insensitive and inappropriate insults, teasing, bullying, and the myriad of other sorts of misconduct that are the result of immaturity and ignorance and which are an intractable part of every school. *See Davis*, 526 U.S. at 651.

Title VI is a narrow law that imposes a high standard that a plaintiff must satisfy before a school district will be found liable for its conduct regarding peer-on-peer harassment. A school district is liable under Title VI only if the harassment "is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school" and the district is deliberately indifferent to that harassment. *Davis*, 526 U.S. at 650. A school district is not deliberately indifferent simply because it did not follow its own policies, *Sanches*, 647 F.3d at 169, could have handled the situation better, *Jauquet*, 2020 U.S. Dist. LEXIS 153636, at *19, or did not handle the matter in the way the plaintiff wanted, *Jauquet*, 996 F.3d at 809.

Aside from one inappropriate but objectively minor incident, the district investigated every incident. When it found that the evidence supported discipline, it punished the perpetrator. Never did any peer allegedly repeatedly harass S.Q. In light of these facts, no reasonable finder of fact could conclude that the district was deliberately indifferent. Thus, as a matter of law, Kettle Moraine did not violate Title VI.

**IT IS THEREFORE ORDERED** that Kettle Moraine School District's motion for summary judgment (ECF No. 36) is **granted**. S.Q.'s complaint and this action are dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Kettle Moraine School District's motion to exclude the affidavit and testimony of Bruce Levenberg (ECF No. 55) is **dismissed as moot**.

Dated at Milwaukee, Wisconsin this 23rd day of June, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge